ORIGINAL

## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | | |
|---|---|---|
| BRENDA VALLEJO, individually, as | § | |
| Next friend of PHILLIP MICHAEL VALLEJO | § | |
| JR., and GIANNA BRIELLE VALLEJO | § | |
| As Representative of the Estate of PHILLIP | § | |
| VALLEJO and REBECCA VALLEJO | § | |
| | § | |
| **Plaintiffs** | § | |
| | § | |
| Vs. | § | CIVIL ACTION NO. 4:15-cv-00749-A |
| | § | |
| CITY OF FORT WORTH, CITY OF FORT | § | |
| WORTH BY AND THROUGH THE FORT | § | |
| WORTH POLICE DEPARTMENT, | § | |
| SGT. M.J. OCHSENDORF as an agent of | § | |
| FORT WORTH POLICE DEPARTMENT | § | |
| and individually,  OJOS LOCOS | § | |
| SPORTS CANTINA, LLC, OJOS LOCOS | § | |
| SPORTS CANTINA MANAGEMENT, LLC | § | |
| OJOS LOCOS SPORT CANTINA DOS, LLC, | § | |
| and OJOS LOCOS HOLDINGS, LLC | § | |
| | § | |
| | § | |
| **Defendants** | § | |

MAR 1 5 2016

CLERK, U.S. DISTRICT COURT
By _____ Deputy

### PLAINTIFFS' THIRD AMENDED ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES **BRENDA VALLEJO, individually and as next friend of**

**PHILLIP MICHAEL VALLEJO JR., and GIANNA BRIELLE VALLEJO minors, and as**

**Representative of the ESTATE of PHILLIP VALLEJO and REBECCA VALLEJO;**

(hereinafter collectively referred to as "Plaintiffs"), complaining of Defendants, **CITY OF**

**FORT WORTH, FORT WORTH POLICE DEPARTMENT, SGT. M.J. OCHSENDORF,**

**OJOS LOCOS SPORTS CANTINA, LLC, OJOS LOCOS SPORT CANTINA**

**MANAGEMENT, LLC, OJOS LOCOS SPORTS CANTINA DOS, LLC AND OJOS LOCOS HOLDINGS, LLC** and for cause would show the following:

## I. PARTIES

1. Petitioner BRENDA VALLEJO was married to decedent PHILLIP VALLEJO and is the natural mother of PHILLIP MICHAEL VALLEJO, JR. and GIANNA BRIELLE VALLEJO. BRENDA VALLEJO brings the instant claims individually and as next friend of PHILLIP MICHAEL VALLEJO JR., and GIANNA BRIELLE VALLEJO minors. Decedent PHILLIP VALLEJO died intestate and formal administration of his estate is not necessary at this time. However, a pending probate matter was initiated in the Tarrant County Probate Court for the Temporary Appointment of BRENDA VALLEJO and as Representative of the ESTATE of PHILLIP VALLEJO.

2. REBECCA VALLEJO is the natural birthmother of PHILLIP VALLEJO and has standing to bring claims pursuant to the Texas Civil Practice and Remedies Code. Plaintiff REBECCA VALLEJO is suing in her individual capacity as a statutory wrongful death beneficiary pursuant to Texas Civil Practices and Remedies Code § 71.002 et. seq.

3. All Plaintiffs are United States Citizens who reside in the County of TARRANT, Texas.

4. Plaintiff BRENDA VALLEJO as legal spouse of Phillip Vallejo, as next friend of Phillip Michael Vallejo, Jr. and Gianna Brielle Vallejo minors, and as Administrator of the Estate of Phillip Vallejo, deceased, brings this action on behalf of Phillip Vallejo's estate. She has standing to assert survival claims as spouse, next of friend of minor children and on behalf of the Estate pursuant to the Texas Civil Practices and Remedies Code. She is suing for the wrongful death of her husband and

2

for the violation of his civil rights pursuant to the Texas and United States Constitution.

5.      Defendant CITY OF FORT WORTH operates and manages the FORT WORTH POLICE DEPARTMENT and is, and was at all times mentioned herein, responsible for the actions or inactions and the policies, procedures and practices/customs, training, retention and supervision of all officers, employees and agents of the FORT WORTH POLICE DEPARTMENT. Defendant CITY OF FORT WORTH has previously appeared and answered.

6.      Defendant M.J. OSCHSENDORF was at all times mentioned herein, an officer of the Fort Worth Police Department and is currently employed by the Fort Worth Police Department.  M.J. OSCHSENDORF has previously appeared and answered.

7.      Defendants OJOS LOCOS SPORTS CANTINA LLC, OJOS LOCOS SPORTS CANTINA MANAGEMENT LLC, OJOS LOCOS SPORTS CANTINA DOS LLC AND OJOS LOCOS HOLDINGS, LLC (hereinafter "Defendants Ojos Locos") was at all times mentioned herein, a business entity operating in Fort Worth, Texas where the incident occurred. Defendants OJOS LOCOS SPORTS CANTINA LLC, OJOS LOCOS SPORTS CANTINA MANAGEMENT LLC, OJOS LOCOS SPORTS CANTINA DOS LLC AND OJOS LOCOS HOLDINGS, LLC has previously appeared and answered.

8.      All above named Defendants and each of them, to the extent they engaged in any acts or omissions alleged herein engaged in such acts or omissions under color of state law.

9.      Plaintiffs injuries as set forth herein with particularity, were caused by Defendants acts, omissions and/or events.  These acts and/or omissions resulted in the death of decedent PHILLIP VALLEJO and damages sustained by Plaintiffs.

3

## II. JURISDICTION AND VENUE

10.     As much of this case is brought pursuant to 42 U.S.C. § 1983, this Court has federal subject matter jurisdiction pursuant to 28 U.S.C. §1331 and 28 U.S.C. § 1343(a)(3).  Plaintiffs further invoke the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367(a), to consider any state law claims.

11.     The Court has general personal jurisdiction over all Defendants as they reside, work and/or conduct business in Tarrant County.  This court also has jurisdiction over the City of Fort Worth as it is a Texas unit of government.

12.     This Court has specific in personam jurisdiction over all defendants because this cause arises out of a series of events and conduct that caused the death of Phillip Vallejo while an invitee at Ojos Locos.  Said property owned by Defendant Ojos Locos is located in Fort Worth, Tarrant County, Texas which is within the purview of the United States District Court for the Northern District of Texas-Fort Worth Division.

13.     Venue of this cause is proper in the Northern District pursuant to 28 U.S.C. § 1391(b) because a substantial portion of the events or omissions giving rise to the Plaintiffs' claims occurred in  Fort Worth, Tarrant County, Texas which is within the purview of the United States District Court for the Northern District of Texas-Fort Worth Division.

## III. CONDITIONS PRECEDENT

14.     All conditions precedent to the institution of this action have been performed or have occurred.

## IV. FACTUAL ALLEGATIONS

15.     On or about July 30th or 31st, 2015, in Fort Worth, Tarrant County, Texas, Phillip Vallejo and his wife Brenda Vallejo were invitees of a business establishment known as Ojos Locos located at 1515 Houston Street in Fort Worth, Texas.  Defendant Ojos Locos holds itself out as a "cantina" or bar where alcoholic beverages may be bought and consumed.  On the date of the incident, Phillip Vallejo and his wife, Brenda Vallejo were at Ojos Locos celebrating Phillip's thirtieth (30th) birthday.

16.     Early on the morning of July 31, 2015, as they prepared to leave Ojos Locos, the Vallejo's were approached by their waitress who confronted them as to why they did not leave her a tip. Phillip informed the waitress that he had tipped her, but returned to his former table inside the restaurant to provide the employee with an additional tip.  While Phillip went back into Ojos Locos, Brenda waited in the area immediately adjacent to the main entrance, an area operated, occupied and/or controlled by Ojos Locos. As she waited, a group of visibly intoxicated males exited Ojos Locos.  Brenda was approached by one of the intoxicated men who physically grabbed Brenda Vallejo's hand and began making loud and inappropriate comments including that he would marry her.  Clearly, it was foreseeable that patrons of Ojos Locos who consumed alcoholic beverages would become intoxicated.

17.     No one from Ojos Locos stepped in to protect Brenda from being grabbed by the intoxicated third-party patron who had just exited Ojos Locos.  Brenda immediately pulled her hand away and stepped back from the drunken individual who was a complete stranger.  As Phillip was returning to Brenda, he saw what was occurring and asked her if she knew the individuals who had gathered around her.

5

Brenda was visibly upset and said she did not know any of the individuals.  The group of men consisted of approximately three (3) individuals who engaged in a verbal exchange with Phillip.  Again, no one from Ojos Locos stepped in to diffuse the situation or separate Phillip and Brenda from the intoxicated males, nor did Ojos Locos employees attempt to prevent a crowd from gathering in the area immediately adjacent to the main entrance.

18.     During the verbal exchange, one of the intoxicated men pulled up his purple shirt showing Phillip and Brenda he had a gun tucked in his waistband.  Several individuals witnessed this Ojos Locos patron reveal the handgun in a threatening manner to Phillip and Brenda.  After being threatened by a group of third-party patrons, one of whom possessed a handgun, Phillip and Brenda walked toward their car which was parked in close proximity to Ojos Locos.  Phillip had opened the car door to retrieve a cigarette and began to smoke it.  Ojos Locos did not have security present either in or immediately outside of the premises.  Clearly, this individual had been in possession of a firearm while inside Ojos Locos, an entity which serves alcohol and must do so pursuant to the Texas Alcohol and Beverage Code, as he had not left the area after immediately exiting Ojos Locos.  Ojos Locos should have had security present, to protect its patrons, either inside or immediately outside as it is clearly foreseeable that individuals consuming alcohol may become violent towards other patrons as well as foreseeable that patrons with firearms on their person may enter its establishment.  Eventually the group of males walked further away from Ojos Locos after several witnesses had a conversation with them in an effort to diffuse the situation.

19.     Minutes later, as Phillip was returning from their vehicle, he and Brenda

stopped immediately in front of Ojos Locos to discuss what had just occurred. Phillip continued speaking to Brenda in a non-threatening, non-aggressive manner.

20.     Moments later, Officers approached the area where Brenda and Phillip Vallejo were discussing what had just occurred. Brenda Vallejo was facing away from Ojos Locos towards Houston Street while Phillip was facing the Ojos Locos building with his back towards Houston Street. At that time, Phillip Vallejo posed no immediate threat or death or serious injury to anyone.

21.     July 30, 2015 was a Thursday and there were many people at the Ojos Locos Sports Cantina both in and outside of the establishment. Although it was unknown to Phillip Vallejo at the time, approximately three Fort Worth Police officers on bicycle were descending upon the Ojos Locos location armed with weapons. One officer was heard screaming out a command apparently directed towards Phillip Vallejo. Phillip was commanded to put his hands in the air and turn around. He complied with the officer's command and raised both arms over his head. Phillip was not behaving aggressively either verbally or physically toward anyone. In fact, at the time he was shot, he and his wife Brenda were about to head toward their vehicle to go home.

22.     Without warning and as Phillip was attempting to comply with commands of the Fort Worth Police Department, suddenly Defendant Ochsendorf fired approximately six shots striking Phillip in the left flank, the left middle back, the left lower back and grazing his left arm. Witnesses allege that these shots were fired into his body as he stood in a frozen state with his hands raised above him and his back to the officer who shot him. The two remaining bullets struck the Ojos Locos building narrowly missing patrons in the area.

23.    At all times during the incident, it was feasible and necessary for Defendant Ochsendorf to warn the public and Phillip prior to the use of deadly force. An independent autopsy confirms that the bullets from Defendant Ochsendorf's weapon entered Phillips body through his back and exited the right lower chest and left middle chest.  See Exhibit "A", a true and correct copy of the independent autopsy performed on Phillip Vallejo, attached hereto and incorporated for all purposes.

24.    At all times prior to, during and after the incident, Phillip Vallejo was a United States Citizens who was guaranteed all protections and rights afforded to him by the United States Constitution when the police officers approached and began to detain him.  By the very nature of their occupation as law enforcement, the responding Officers including M.J. Ochsendorf were aware, or should have been aware, of Phillip Vallejo's constitutional rights and protections once they approached him for detainment.

25.    Several patrons and employees inside of Ojos Locos witnessed the shooting of Phillip by Defendant Ochsendorf whose gun-fire was directed toward the occupied Ojos Locos establishment resulting in the shattering of the front door.  No other officer at the scene fired their weapon.    Immediately following Sgt. M.J. Ochsendorf's shooting of Phillip, a panic ensued in Ojos Locos and many individuals began to record the aftermath.  Several individuals can be overheard, on a video recording, asking why Phillip was shot and stating he did not have a weapon in his hands. Another patron can be heard screaming "murderer.....murderer!"" at Defendant Ochsendorf.

26.    After being shot multiple times by Defendant Ochsendorf, Phillip was handcuffed by officers of the Fort Worth Police Department and expressed that was

overheard informing Officers that he could not breathe. The Officers responded by screaming and commanding Phillip to "shut the [expletive] up". Officers refused to remove the handcuffs despite the fact that he was of no threat to anyone and needed emergency medical attention. Instead, they deliberately chose to leave him lying on the pavement in a prone position. Although Phillip was still alive and desperately in need of urgency medical care, video shows officers appeared more concerned with inspecting Phillip's body to locate entrance and exit wounds, as paramedics waited from a distance. However, none of the police officers inspecting Phillips body provided any type of emergency medical care. Officers failed to administer even basic first aid, such as the application of pressure to bleeding wounds. Again, video of the actual incident shows witnesses commenting on the lack of care and the enormous loss of blood as Phillip deteriorated and became unconscious.

27.     Immediately following the shooting, Brenda was thrown against the wall by a Police Officer and then placed in the back of a Police vehicle with no ventilation. Brenda was desperate to go her husband's aid but was locked in the Police vehicle. She began yelling out and pleading with Officers, to be released, but hearing her cries, they began yelling at her profanely and decided instead to roll the windows of the vehicle up. When asked if she was under arrest, Officer Mendoza, of the Fort Worth Police Department, informed her that she was not but refused to let her out of the vehicle. She also informed the Officers that she could not breathe. Her cries for help were again ignored and also once the Officers realized she had her cell phone in the Police vehicle, an Officer quickly opened the door and grabbed her cell phone away from her. Brenda was locked in the police vehicle feeling helpless for what seemed like

an eternity as she watched her husband's blood flow out of his body and into the street.

28.     The Officers in the area did not aide Phillip despite being aware that he had been shot multiple times which at a minimum exemplifies the Officers' including, M.J. Ochsendorf, deliberate indifference to Phillip's need for immediate medical treatment.  Clearly, by the very nature of their occupation, the Officers, including M.J. Ochsendorf, were aware of, as well as foreseeable, that a person sustaining gunshot wound injuries could escalate to additional and/or more severe injuries including death resulting from lack of immediate medical care.

29.     Phillip was not provided medical treatment by the Officers thereby exemplifying acts and/or conduct constituting deliberate indifference on the part of all Officers in the area in addition to the acts and/or conduct of Sgt.  M.J. Ochsendorf. Furthermore, Phillip did not have a gun and was not acting in a threatening manner to Officers, himself or other individuals the use of deadly/lethal force was unwarranted and excessive as Phillip was complying with the commands while being detained.

30.     Once emergency medical responders were allowed to treat Phillip, Brenda continued in the custody and control of the Fort Worth Police Department and its Officers.  Phillip was finally transported to the hospital where the medical staff was incorrectly informed by the Officers and/or dispatchers that Phillip was shot in the front as he faced Officers.  Sadly, Phillip died alone as his wife remained in police custody until the following day.  The autopsy performed cites that cause of death as "homicide" resulting from multiple gunshot wounds entering the body through the back and exiting the front.   See Exhibit "A".   The following conduct on the part of Sgt. M.J. Ochsendorf constituted deliberate indifference, exhibited by the excessive force and abuse of

power: firing multiple shots at Phillip, without warning, in custody, from the back with hands raised towards a place of business full of customers and employees. Tragically, thirty year old Phillip Vallejo—a husband, father and son lost his life.

31.     The tragedy of Phillip's death was compounded by the treatment of his wife who unable to be with him before his death.  In fact, Brenda remained in the custody and control of the Fort Worth Police Department until approximately 6:00 AM. Brenda was transported from the scene of the shooting to the Police station and placed in a small room.  She asked if she was under arrest and was informed that she was not. She asked if she could leave, she was informed that she could not and that the Police intended to question her.  While she remained in the room alone, an Officer guarded the door ensuring she could not leave.  When Brenda asked to use the restroom, an Officer ordered her to a particular bathroom and further commanded her to immediately cease speaking to her friend who had witnessed the shooting and was also in the custody and control of the Fort Worth Police Department.

32.     For several hours while Brenda remained confined to the small room, believed to be used for interrogation purposes, she was never informed of Phillip's condition.  Brenda remained without her cellular phone and isolated from her family who waited for her at the Police station to help her cope with the news which her waiting children had already received. Brenda's children and her sister begged the Officer on duty in the waiting area to not inform Brenda of Phillip's passing and allow her children to be with her when she received the news.

33.     For reasons unbeknownst to Brenda or her family, moments before she was released from the custody and control of the Fort Worth Police Department, an

Officer informed her of Phillip's death.  Moments after hearing of her husband's death, and without the love and support of her family, she was hurriedly escorted out of the holding area by Officers.  To date, Brenda Vallejo has not been charged with a crime related to the shooting and she has never been informed as to the basis for her detainment by the Fort Worth Police Department.

34.  Within hours of Phillip's death, Sgt. Steven Enright, spokesman for the Fort Worth Police Department stated to the media that a video existed as to the incident and that after Phillip "turned and faced the Officer as if to confront him with the weapon" he was shot.  To date, the alleged videotape has not been released for public viewing. Moreover, despite the release of exculpatory videos by the Fort Worth Police in prior instances, the Fort Worth Police Department has consistently refused to release this particular videotape at issue or request an independent investigation to be conducted by the Federal Bureau of Investigation.

35.    At the time of his death, Phillip Vallejo was survived by his wife BRENDA VALLEJO, his children PHILLIP MICHAEL VALLEJO JR. and GIANNA BRIELLE VALLEJO, and REBECCA VALLEJO, his mother.  Moreover, Phillip became a father to two additional children, children of Brenda and her first husband who died years prior to this incident.  Phillip came to know and love the children as if they were his own.  Not only did he support them, he held them out to the world as his own children. Phillip had no history of violent crime.

36.    At the time of the incident, Defendant Ochsendorf failed to identify himself, fired from a significant distance and without warning.  At the time of the incident, Phillip Vallejo posed no immediate threat of death or serious injury to anyone.

No other officer fired their weapon, however, those officers made no effort to prevent Defendant Ochsendorf from unlawfully firing his weapon.

37.    At all times relevant to this suit, Defendant Ochsendorf and the other responding officers were acting within the course and scope of their employment with the City of Fort Worth.  Further, each individual was a licensed peace officer acting under color of state law while participating in the unprovoked and unlawful killing of Phillip Vallejo.

38.    As Phillip Vallejo remained on the pavement bleeding to death, Fort Worth Police officers did absolutely nothing to try and save his life.  Although trained to provide medical assistance, they neither attempted to control his excessive blood loss nor did they even conduct a basic physical assessment to determine what medical procedures might help to increase his chances for survival.  From the time he was shot until the time paramedics arrived at Ojos Locos, none of the officers attempted to do anything to medically assist Phillip.

39.    Rather, the officers collectively agreed to adopt a false version of the events leading up to Phillips homicide to prevent anyone from discovering their unlawful conduct.  This conspiracy was caught on video as one of the officers moves Phillips unconscious body forward and back ignoring Phillip's deteriorating physical condition but quite focused on an analysis of entry and exit wounds to Phillis torso.  Subsequently, each officer conspired to say that Phillip was forward facing at the time he was shot and moved toward Defendant Ochsendorf resulting in the shooting.  This version of events was then publically aired by Sgt. Enright on the nightly news.  Upon reasonable belief and information, the officers also signed false statements containing

the same information regarding Phillip's actions and his position at the time of the incident. These statements were all made to conceal the fact that Defendant Ochsendorf actually shot Phillip multiple times in the back as he stood with his arms up in the air in a completely unthreatening manner. Officers present at the scene of the shooting, including Defendant Ochsendorf, through the aforementioned acts and/or omissions exhibited deliberate indifference and failed to provide Phillip Vallejo with medical treatment.

40.     The death of Phillip Vallejo was one of a string of incidents reflecting a pattern, practice and habit of abusive and unlawful conduct by the Fort Worth Police Department which resulted in deaths and/or serious injuries. The Fort Worth Police Department has engaged in pattern and practice of utilizing excessive force on those it is entrusted to protect and deliberate indifference to the medical needs of citizens it detains.

41.     Defendants FORT WORTH POLICE DEPARTMENT and Defendant M.J. OCHSENDORF are responsible for the decedent's death for the following reasons:

      a.     Said Defendants were deliberately indifferent through the use of excessive force by firing multiple shots, towards a place of business with customers and employees inside, without warning, into Phillip Vallejo's back while he was complying with Officers' commands having his hands raised;

      b.     Said Defendants use of excessive force was unwarranted as Phillip Vallejo did not pose a threat to the officers, other individuals or himself prior to the firing of multiple shots into his back without warning;

      c.     Said Defendants deliberate indifference and use of excessive force

violated decedent's civil rights and caused his death;

  d. Said Defendants continued the practice of deliberate indifference transitioned from use of excessive force and violation of decedent's civil rights to consciously disregarding decedent's need for immediate medical treatment by handcuffing him immediately after the shooting while he was bleeding and informed Officers he could not breathe as well as video recording of Officers in the area moving around and not assisting Phillip; and

  e. Defendant Fort Worth Police Department failed to properly hire, train and/or supervise its employees including Sgt. Ochendorf and the additional Officers present at the time of the shooting and immediately thereafter regarding use of force, civil rights of persons detained and/or providing medical treatment.

  42. Defendants OJOS LOCOS are responsible for the decedent's death for the following reasons:

  a. Defendant had a duty to decedent as an invitee of its establishment to protect him from any and all dangerous conditions Defendants knew or should have known regarding the activity in the immediate area and that its location was prone to a high incidence of violence and did nothing to protect its invitees or warn of said danger said conditions include overserving its customers and/or serving intoxicated individuals entering its premises and by not providing security to protect its customers and employees;

  b. Defendant failed to properly hire, train and/or supervise its employees regarding duties owed to invitees to keep the premises secure and free of any and all dangerous conditions including threats of physical harm from

other invitees such as that experienced by Phillip and Brenda Vallejo when confronted by three intoxicated males exiting Ojos Locos;

      c.     Defendant failed to provide decedent, an invitee of its establishment, with a safe and secure environment from other invitees who threaten violence and the security of Phillip Vallejo and Brenda Vallejo; and

      d.     Defendant failed to prevent other armed invitees, the three individuals who threatened Phillip Vallejo and Brenda Vallejo, from entering its establishment, consuming alcohol and threatening other patrons with firearms.

43.    As a result of the Defendant's conduct alleged herein, Mr. Vallejo suffered extreme pain and suffering, emotional distress, economic losses and his untimely death. His family members also suffered and continue to suffer emotional pain and injury as Brenda Vallejo contemporaneously witnessed the shooting of her husband.

44.    As a result of the Defendants' conduct alleged herein, Plaintiffs BRENDA VALLEJO, PHILLIP MICHAEL VALLEJO JR., GIANNA BRIELLE VALLEJO, and REBECCA VALLEJO, decedent's wife, children and mother respectively have lost the lifelong love of their husband, father and son and suffered emotional distress as well as mental anguish. Plaintiffs have also suffered pecuniary and non-pecuniary damages including but not limited to loss of financial support, society, companionship, comfort, care, solace and protection.

45.    Brenda Vallejo has filed her temporary application to be appointed administrator of the Estate of Phillip Vallejo with the Tarrant County Probate Court under cause no. 2016-PR00290-1. See Exhibit "B", a true and correct copy of the application filed in the Tarrant County Probate Court. Her application is pending Court

approval.  Brenda Vallejo is an appropriate Estate Administrator as she is the widow of the decedent and the biological mother of the children of the marriage.  Furthermore, the children born to the marriage of decedent and Brenda Vallejo are the only children of the decedent.

## V. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF AGAINST CITY OF FORT WORTH, DEFENDANT M.J. OCHSENDORF AND FORT WORTH POLICE DEPARTMENT
Deliberate Indifference to
Serious Medical Needs, Health and Safety
**Survival Action – 42 U.S.C. §1983**

46.    On behalf of the decedent Phillip Vallejo, Plaintiffs re-allege and incorporate by reference sections I through IV, as though fully set forth herein.

47.    At all times material hereto, M.J. OCHSENDORF was acting under color of state law in the course and scope of his duties as an officer, employee, and/or agent of and in the FORT WORTH POLICE DEPARTMENT.

48.    Defendants knew that Phillip Vallejo, a United States citizen entitled to constitutional protection under the Fourth and Fourteenth Amendments had been shot in the back, numerous times by M. J. OCHSENDORF and knew that he required immediate medical attention.

49.    Defendants knew that Phillip Vallejo was bleeding and having difficulty breathing while handcuffed and required immediate medical attention.

50.    Defendants all effectively disregarded this risk of further medical complications and/or additional physical harm including loss of life thereby constituting deliberate indifference as to Phillip Vallejo's need for medical treatment by not effectuating proper medical treatment and medical care.

51.     As the right to adequate medical attention and medical treatment for life threatening injuries was clearly established at the time of Mr. Vallejo's death, Defendants actions and omissions were objectively unreasonable and deliberately indifferent to this right.

52.     Defendants' acts and/or omissions as alleged herein, including but not limited to their failure to provide Mr. Vallejo with medical care and/or take other measures to prevent his death after notice of his inability to breathe, along with the acts and/or omissions of the Defendants in failing to train, supervise and/or promulgate appropriate policies and procedures in order to prevent this Incident and death due to lack of medical treatment, constituted deliberate indifference to Mr. Vallejo's serious medical needs, health and safety.

53.     As a direct and proximate result of Defendants' conduct, Mr. Vallejo experienced pain and suffering, severe emotional distress, the loss of his life and the damages alleged herein.

54.     As a direct and proximate result of the Defendants' conduct, Plaintiffs suffered damages as alleged herein.

55.     The aforementioned acts and/or omissions of the individually named Defendants were malicious, reckless and/or accomplished with a conscious disregard of decedent's rights thereby entitling Plaintiffs to an award of exemplary and punitive damages according to proof.

### SECOND CLAIM FOR RELIEF CITY OF FORT WORTH, DEFENDANT OCHSENDORF AND FORT WORTH POLICE DEPARTMENT
Municipal Liability (*Monell* Claim)
**Survival Action - 42 U.S.C. § 1983**

56.     On behalf of the decedent Phillip Vallejo, Plaintiffs re-allege and

incorporate by reference sections I through VI, as though fully set forth herein.

57.     The aforementioned acts and/or omissions of the Defendants City of Fort Worth, Fort Worth Police Department and Sgt. M.J. Ochsendorf in being deliberatively indifferent to decedent's serious medical needs, health and safety and violating decedent's civil rights were the direct and proximate result of customs, practices and policies of Defendants CITY OF FORT WORTH, FORT WORTH POLICE DEPARTMENT, and DEFENDANT OCHSENDORF.

58.     Such policies, customs and/or practices include but are not limited to the following:

> a.     Failing to promulgate adequate policies and procedures for officer conduct regarding the use of force in response to a situation;
>
> b.     Failing to promulgate adequate policies and procedures for officer conduct in the use of a firearm;
>
> c.     Failing to institute adequate policies and procedures for officer conduct when a detainee expresses serious physical distress or when that distress is readily apparent.  Phillip Vallejo informed Officers of his inability to breathe thereby requiring medical treatment, and Officers awareness of Phillip Vallejo's bleeding due to gunshot wounds thereby contributing to life threatening injuries and ultimately loss of life;
>
> d.     Failing to institute adequate policies and medical procedures for the application and use of handcuffs in regard to detainees with life threatening injuries.
>
> e.     Failing to institute adequate policies and procedures for the removal of handcuffs in regard to detainees in medical distress;

f.      Failing to institute adequate policies and procedures for initiation of emergency medical treatment to detainees in need;

g.      Failing to institute adequate policies and procedures in regard to the determination of the number of shots an officer is to fire and under what circumstances.  An adequate policy would have constitutionally advocated for the least number of shots to be fired only when a serious threat of death or injury exists.  Defendant Ochsendorf's firing of at least six rounds was excessive and unconstitutional.

h.      Inadequate supervision, training and retention of city employees including Defendant Ochsendorf and the additional Officers present of the Fort Worth Police Department;

i.       Failing to promulgate adequate policies regarding the medical treatment of detained individuals including those suffering gunshots wounds as Phillip Vallejo experienced ; and

j.       Instituting and promoting an ongoing pattern of deliberate indifference to the medical needs, health, and safety of detained individuals as evidenced by the lack of medical treatment provided to Phillip Vallejo by the numerous Officers present of the Fort Worth Police Department at the scene of the shooting.

59.      Each of these policies was actually known, constructively known, encouraged, approved, and/or ratified by Defendants CITY OF FORT WORTH, FORT WORTH POLICE DEPARTMENT and SGT. M.J. OCHSENDORF as well as all other policymakers and was promulgated with deliberate indifference to Mr. Vallejo's rights

as guaranteed under the Fourth and Fourteenth Amendments to the United States Constitution, federal statutes and law, and Texas statutes and law. Moreover, the known and obvious consequences of these policies was that employees of the FORT WORTH POLICE DEPARTMENT would be placed in recurring situations in which constitutional violations and/or violations of federal law would result. Accordingly, these policies also made it highly predictable that the particular violations alleged here would result.

60.     The customs, policies and/or practices of said Defendants were a direct and proximate cause of the Plaintiffs' injuries and death of the decedent, Phillip Vallejo, in that said Defendants failed to adequately train and supervise their employees and/or agents to prevent the occurrence of the constitutional violations occurring in this Incident. Said Defendants also failed to promulgate appropriate policies or procedures or take other measures to prevent this incident and similar incidents.

61.     As a direct and proximate result of the aforementioned customs, policies and/or practices of said Defendants, the decedent and Plaintiffs suffered injuries and damages as alleged herein.

## THIRD CLAIM FOR RELIEF AGAINST DEFENDANTS CITY OF FORT WORTH, AND FORT WORTH POLICE DEPARTMENT
### Supervisory Liability
### Survival Action – 42 U.S.C. § 1983

62.     On behalf of the decedent PHILLIP VALLEJO, Plaintiffs re-allege and incorporate by reference sections I through VI, as though fully set forth herein.

63.     Defendants were deliberatively indifferent to decedent's serious medical needs, health, safety and civil rights by failing to train its officials and employees to properly address the serious medical needs of detained individuals. These

21

constitutional duties, of the Fourth and Fourteenth Amendment were repeatedly violated by the Fort Worth Police Department by its officers.  Throughout the events leading up to Phillip's death, the failure to train and supervise the employees in this area created an extremely high risk that constitutional violations will ensue.  Phillip Vallejo complained of his inability to breathe to Officers and continued to bleed-out in their presence. The Officers did nothing to provide him with medical treatment immediately after being shot by Defendant Ochsendorf despite being in the immediate area as shown on video recordings taken immediately after the shooting.

64.    Furthermore, the Defendants' pattern of unconstitutional conduct and policies were so pervasive as to constitute actual or constructive knowledge of the conduct on the part of policy makers, whose deliberate indifference to the unconstitutional practices is evidenced by a failure to correct the situation once the need for training and supervision became obvious.

65.    The aforementioned lack of supervision and training was a moving force behind the alleged constitutional violations herein and the decedent and Plaintiffs suffered injuries and damages as alleged herein.

### FOURTH CLAIM FOR RELIEF AGAINST DEFENDANTS CITY OF FORT WORTH, DEFENDANT M.J. OCHSENDORF AND FORT WORTH POLICE DEPARTMENT
Excessive Force-4th and 14th Amendment Violations
**42 U.S.C. §1983**

66.    On behalf of the decedent PHILLIP VALLEJO, Plaintiffs re-allege and incorporate by reference sections I through VI, as though fully set forth herein. Additionally, Plaintiffs allege both that the use of unreasonable and unwarranted deadly force by SGT. M.J. OCHSENDORF shooting him without warning of use of deadly force as well as shooting from the back when Mr. Vallejo was not a threat to anyone.

Moreover, Mr. Vallejo having been kept in deplorable condition and Officers of the FORT WORTH POLICE DEPARTMENT at the scene forcing him to remain in handcuffs until emergency medical responders arrived on the scene even after he informed the Officers at the scene of his inability to breathe were objectively unreasonable violations of his Fourth Amendment rights. These actions were both witnessed and exist on video recording.

67. Further, the actions of SGT. M.J. OCHSENDORF, use of excessive deadly force, and the other Officers responding or failing to respond to decedent's medical needs as described herein constituted an unreasonable and wanton infliction of pain which caused his death. The aforementioned actions of SGT. M.J. OCHSENDORF and Officers of the FORT WORTH POLICE DEPARTMENT were objectively unreasonable as well as actions constituting deliberate indifference which were applied maliciously and sadistically for the very purpose of causing harm, thereby violating decedent's constitutional rights which were clearly established in to due process as protected by the Fourteenth Amendment to the United States Constitution.

68. As a direct and proximate result of said acts and/or omissions by Defendants, decedent and Plaintiffs suffered the injuries and damages alleged herein.

69. As a direct and proximate result of the Defendants' conduct, Plaintiffs suffered injuries and damages as alleged herein.

70. The aforementioned acts and/or omissions of the individually named Defendants were malicious, reckless and/or accomplished with a conscious disregard of Plaintiff's rights thereby entitling Plaintiff to an award of exemplary and/or punitive damages against said Defendants according to proof.

## FIFTH CLAIM FOR RELIEF AGAINST DEFENDANTS CITY OF FORT WORTH, SGT. M.J. OCHSENDORF AND FORT WORTH POLICE DEPARTMENT
Substantive Due Process - Loss of Spousal Relationship and Loss of Parent-Child Relationship
**(42 U.S.C. §1983)**

71.     Plaintiffs re-allege and incorporate by reference sections I through IV as though fully set forth herein.

72.     The aforementioned acts and/or omissions of the Defendants in being deliberatively indifferent to decedent's serious medical needs, health and safety and violating decedent's civil rights and their failure to train, supervise and/or take other measures with the Fort Worth Police Department to prevent the conduct in this incident caused the untimely and wrongful death of the decedent and deprived Plaintiff of his liberty interest in his familial relationships in violation of his substantive due process rights as defined by the Fourteenth Amendment to the United States Constitution.

73.     In addition, Phillip Vallejo was restrained for a period in gross excess to a reasonable amount time for purposes of his substantive due process rights as afforded under the Fourteenth amendment.   Moreover, Phillip Vallejo was told to "shut the [expletive] up" when he informed Officers he could not breathe thereby exhibiting deliberate indifference and/or intentional, conscious disregard for his immediate medical needs caused by Sgt. M.J Ochsendorf's multiple shots which entered the back of his body causing him to bleed internally and externally.

74.     As a direct and proximate result of the aforementioned acts and/or omissions of Defendants, Plaintiffs suffered injuries and damages as alleged herein.

75.     The aforementioned acts and/or omissions of the individually named Defendants were malicious, reckless and/or accomplished with a conscious disregard

of Plaintiffs' rights thereby entitling Plaintiffs to an award of exemplary and punitive damages according to proof.

### SIXTH CLAIM FOR RELIEF AGAINST DEFENDANTS CITY OF FORT WORTH AND FORT WORTH POLICE DEPARTMENT
Negligence/Negligence Per Se/Negligent Hiring, Training and Supervision
**(Survival Action – Texas State Law)**

76.     On behalf of the decedent PHILLIP VALLEJO, Plaintiffs re-allege and incorporate by reference sections I through IV, as though fully set forth herein.

77.     Defendants CITY OF FORTH WORTH, and FORT WORTH POLICE DEPARTMENT have expressly waived any claims to sovereign immunity.

78.     Defendants CITY OF FORTH WORTH and FORT WORTH POLICE DEPARTMENT have a duty to screen, hire, train and supervise peace officers and law enforcement in a manner so as to prevent the acts and/or omissions as alleged herein. Said Defendants also have a duty to provide medical treatment to detained individuals in their custody and control. Said duty is defined by Texas State Law, law enforcement and administrative regulations. The breaches of said duties and standards including, but are not limited to, the following:

      a.    Failing to implement and/or maintain policies regarding use of deadly force mandating a Fort Worth Police Officers to provide a warning to individuals prior to its use;

      b.    Failing to properly train and/or supervise Fort Worth Police Officers regarding the use of deadly force in a manner which complies with Federal and State laws which mandate the use of deadly force only when the individual being arrested poses a deadly threat to the Officers or other individuals;

c.   Failing to respond to Phillip Vallejo's report of life threatening injury and/or medical condition including his inability to breathe due to having been shot multiple times by Sgt. M.J. Ochsendorf;

d.   Failing to provide medical treatment to Phillip Vallejo once he reported a life threatening injury and/or medical condition including his inability to breathe after having been shot multiple times by Sgt. M.J. Ochsendorf;

e.   Excessive and/or unnecessary restraint of Phillip Vallejo, who was in need of immediate medical treatment after having been shot multiple times by Sgt. M.J. Ochsendorf;

f.   Failing to provide adequate training regarding providing medical treatment to detained individuals which caused and/or contributed to Phillip Vallejo's injuries and loss of life;

g.   Failing to promulgate policies regarding medical treatment to individuals injured after having been subjected to use of physical force by law enforcement, including deadly force, which caused and/or contributed to Phillip Vallejo's injuries and loss of life; and

h.   Instituting and promoting an ongoing pattern of deliberate indifference to the medical needs, health, and safety of detained individuals which caused and/or contributed to Phillip Vallejo's injuries and loss of life.

79.   Defendants breached their respective duties as stated above, and this breach proximately caused injuries and damages to decedent and Plaintiffs as alleged

herein.

80.     Defendants CITY OF FORTH WORTH and FORT WORTH POLICE DEPARTMENT have a duty to hire, supervise, train, and retain employees and/or agents so that its employees and/or agents refrain from the conduct alleged herein including failing to provide medical treatment to Phillip Vallejo once he reported he could not breathe as well as bleeding due to having been shot multiple times by Sgt. M.J. Ochsendorf.

81.     Defendants breached this duty causing the conduct alleged herein. This breach constituted negligent hiring, supervision, training and retention under the laws of the State of Texas.

82.     Such breach proximately caused damage and injuries to decedent and Plaintiffs as alleged herein.

## SEVENTH CLAIM FOR RELIEF
### Failure to Furnish/Summon Medical Care
### Survival Action – Texas State Law
(Against Defendant Ochsendorf and the City of Fort Worth)

83.     On behalf of the decedent PHILLIP VALLEJO, Plaintiffs re-allege and incorporate by reference sections I through IV, as though fully set forth herein.

84.     Defendants CITY OF FORTH WORTH and FORT WORTH POLICE DEPARTMENT have expressly waived any claims to sovereign immunity.

85.     The conduct of said Defendants alleged herein, including but not limited to the fact that said Defendants knew or had reason to know that Plaintiff was in need of immediate medical care and the Defendants failed to take reasonable action to summon such medical care or provide that care resulting in decedent's death as alleged herein violated Texas State Law. Phillip Vallejo was overheard informing

Officers he could not breathe after having been shot.  Officers placed him in handcuffs and told him to "shut the [expletive] up".

86.     Such conduct proximately caused damage and injuries to decedent and Plaintiffs as alleged herein.

87.     Defendants CITY OF FORTH WORTH and FORT WORTH POLICE DEPARTMENT are vicariously liable for the conduct of Defendant SGT. M.J. OCHSENDORF working as a subordinate for CITY OF FORTH WORTH, FORT WORTH POLICE DEPARTMENT and SGT. M.J. OCHSENDORF.

### EIGHTH CLAIM FOR RELIEF
Intentional Infliction of Emotional Distress
**Survival Action – Texas State Law**
(Against Defendant Ochsendorf and the City of Fort Worth)

88.     On behalf of the decedent PHILLIP VALLEJO, Plaintiffs re-allege and incorporate by reference sections I through VI, as though fully set forth herein.

89.     The acts and/or omissions of Defendants CITY OF FORTH WORTH and FORT WORTH POLICE DEPARTMENT alleged herein were outrageous and were undertaken with an intention of causing, or with reckless disregard of the probability of causing, decedent and Plaintiffs' emotional distress.

90.     The aforementioned acts and/or omissions of the individually named Defendants were malicious, reckless and/or accomplished with a conscious disregard of Plaintiffs' rights thereby entitling Plaintiffs to an award of exemplary and punitive damages according to proof.

## NINTH CLAIM FOR RELIEF
Negligence, Premises Liability and Dram Shop Action
### Survival Action-Texas State Law
(Against OJOS LOCOS SPORTS CANTINA LLC, OJOS LOCOS SPORTS CANTINA
MANAGEMENT LLC, OJOS LOCOS SPORTS CANTINA DOS LLC AND OJOS
LOCOS HOLDINGS, LLC)

91.      Plaintiffs hereby incorporate all precedent paragraphs as if stated

verbatim.   Defendants OJOS LOCOS SPORTS CANTINA, LLC, OJOS LOCOS

HOLDINGS, LLC, AND OJOS LOCOS SPORTS CANTINA DOS, LLC possess a duty

to operate their business in a reasonable and prudent manner.  Mr. Vallejo, an invitee

of OJOS LOCOS, as such Plaintiffs would show that as a result of the acts and/or

omissions of Defendant OJOS LOCOS, its employees, agents and/or representatives,

decedent suffered injuries and death.   Defendant OJOS LOCOS's actions and/or

omissions which constituted negligence and premises liability include but are not limited

to the following:

a.      Failing to ensure the protection of decedent and his wife who were
invitees of Ojos Locos and threatened by the group of third party
patrons of Ojos Locos who appeared intoxicated as they exited
Defendants' establishment;

b.      Failing to require the group of intoxicated males who threatened
the decedent and his wife to leave the premises;

c.      Failing to provide security for the benefit and protection of decedent
and his wife who were invitees of Ojos Locos;

d.      Failing to maintain a safe environment for the protection of
decedent and his wife who were invitees of Ojos Locos;

e.      Failing to properly train its employees, agents and/or

representatives as to reporting and addressing verbal altercations between patrons;

f.      Failing to promulgate policies and procedures which address verbal, physical and/or violent altercations occurring among patrons such as those involving Phillip and Brenda Vallejo and the group of males;

g.      Failing to seek assistance from law enforcement prior to the incident escalating from a verbal altercation to a physical altercation which contributed to events leading up to decedent's death;

h.      Negligent hiring, training and/or retention of its employees by failing to ensure that patrons, including the three males who threatened decedent and his wife, are not served alcohol to the point of intoxication;

i.      Negligent hiring, training and/or retention by failing to prevent intoxicated patrons from  when entering its establishment including the three males who threatened the decedent and his wife;

j.      Defendant failed to ensure the safety of decedent and his wife from the dangerous conditions which existed on the premises including another patron possessing a firearm which was foreseeable;

k.      Defendant failed to have the threatening and assaultive third-party patrons brought under control within a reasonable time, after defendant knew or should have known of such patrons' obviously

quarrelsome, threatening, and assaultive conduct, or in the

exercise of reasonable care, should have known of such conduct;

l.     Defendant's failure to discover that the intentional harmful acts of

its patrons who were intoxicated were likely to occur;

m.    Defendant's failure to take any steps to prevent the altercation

which ultimately caused plaintiff's injuries;

n.     Defendant's failure to take reasonable and timely steps to stop the

altercation once it started;

o.     Defendant failed to provide an adequate number of trained security

guards or other appropriate means to keep order on the premises;

p.     Defendant failed to provide necessary and proper procedures for

keeping order on the premises;

q.     Defendant failed to maintain a system of internal surveillance or

monitoring of activity within the bar, or failed to react in a

reasonable manner when dangerous activity occurred;

r.     Defendant failed to employees in proper safety, security, and

protection procedures;

s.     Though events similar to the one that caused the injuries had

previously occurred on defendant's premises, defendant failed to

take any corrective action to prevent a recurrence of the problem;

92.     In addition, Defendant is liable to plaintiff under Sections 2.01 et seq. of

the Texas Alcoholic Beverage Code, in that defendant sold and served alcoholic

beverages to individuals who were obviously intoxicated to the extent that they

presented a clear danger to themselves and others, and the intoxication of the recipients of the alcoholic beverage was a proximate cause of plaintiff's damages. The intoxicated conduct of these individuals was visible, evident, and could be easily observed by defendant's employees, agents, and representatives. Defendant had knowledge of Texas laws and the dangers such violations posed to customers such as Plaintiffs.

93.     Defendant further violated criminal law by knowingly selling alcoholic beverage to intoxicated persons.  Accordingly, defendant is liable for plaintiff's injuries under the Texas Dram Shop Laws.  Each and every, all and singular of the acts and omissions by defendant as described above, taken separately or collectively, constitute a direct and proximate cause of the injuries and damages incurred by plaintiff as previously stated above.

## VI. ADDITIONAL INFORMATION FOR THE COURT'S CONSIDERATION

In order to more fully set forth the underlying factual basis of the allegation of the Complaint, Plaintiffs hereby attach the above-referenced independent autopsy of Phillip Vallejo as Exhibit "A".   The autopsy report sets forth a medical determination revealing the falsehood of the officers' account of events transpiring on or about July 31, 2015. All such information is hereby incorporated by reference in this Complaint pursuant to FED. R. CIV. P. 10(c).

Plaintiffs also attach as Exhibit "B" for the Court's consideration, the pending probate application filed in Tarrant County as a reflection of their good-faith efforts to resolve any question of capacity. Plaintiffs filed the referenced documents despite their continued belief that formal administration is unnecessary under the current circumstances.

## VII. CLAIMS FOR DAMAGES

94.    As plead herein, the actions and omissions of Defendants, jointly and severally, deprived Mr. Vallejo of his civil rights under the United States Constitution and federal law.   These acts and omissions by Defendants, their agents, employees, and/or representatives, proximately caused and/or were the moving force of the wrongful death of Phillip Vallejo, deceased.  Accordingly, Plaintiffs assert claims under the wrongful death and survivorship statutes.

95.    In particular, Plaintiff Brenda Vallejo, as Representative of the Estate of Phillip Vallejo, asserts a survival claim on behalf of Phillip Vallejo's estate.  The estate has incurred damages including, but not limited to, the following:

        a.      Past physical pain and suffering;

        b.      Past mental anguish; and

        c.      Funeral and burial expenses.

96.    Plaintiff, Brenda Vallejo the spouse of Phillip Vallejo, in her individual capacity asserts a wrongful death claim, and has incurred damages including, but not limited to, the following:

        a.      Past and future mental anguish; and

        b.      Past and future loss of companionship, society, services, and affection with her husband.

97.    Plaintiff, Brenda Vallejo as next friend of Phillip Michael Vallejo, Jr. and Gianna Brielle Vallejo the surviving children of Phillip Vallejo, in her individual capacity asserts a wrongful death claim, and have incurred damages including, but not limited to,

the following:

    a.    Past and future mental anguish; and

    b.    Past and future loss of companionship, society, services,

        and affection with their father.

98.    Plaintiff, Rebecca Vallejo the surviving parent of Phillip Vallejo, in her individual capacity asserts a wrongful death claim, and have incurred damages including, but not limited to, the following:

    a.    Past and future mental anguish; and

    b.    Past and future loss of companionship, society, services,

        and affection with their son.

## VIII.  EXEMPLARY DAMAGES

99.    Plaintiffs would show that the acts of the individual Defendants were not the result of any accident, mistake, or honest error of judgment. Rather, such acts were willful and wanton, and were deliberately indifferent to the rights, safety and welfare of the Plaintiffs. Such conduct warrants and requires the imposition of punitive damages against the individual Defendants in whatever amount the trier of fact may find necessary to punish those Defendants and to deter others with similar lawless inclinations from engaging in such conduct in the future.

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

1.    For compensatory, general and special damages against each Defendant, jointly and severally, in the amount proven at trial;

2.    For punitive and exemplary damages against each individually named

Defendant(s) in an amount appropriate to punish Defendant(s) and deter others from engaging in similar misconduct;

    3.      For costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and as otherwise authorized by statute or law;

    4.      For prejudgment and post-judgment interest at the highest rate allowable under the law; and

    5.      For such other relief, including injunctive and/or declaratory relief, as the Court may deem proper.

## X. DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand trial by jury.

Respectfully submitted,

By: _G. James Martinez_
     G. James Martinez

**NICOLE E. HENNING**
Texas State Bar No. 24013054
**G. JAMES MARTINEZ**
Texas State Bar No. 24089444
THE HENNING FIRM
435 W. Nakoma, Suite 101
San Antonio, TX 78216
210-563-7828 (Telephone)
210-563-7829 (Facsimile)
Email: nicole@henningfirm.com
Email: james@henningfirm.com

35

**WILLIAM D. TAYLOR**
State Bar No. 24046954
TAYLOR & TAYLOR, PC
4115 Highgrove Drive
Arlington, Texas 76001
817-483-8388 (Telephone)
817-483-8390 (Facsimile)
Email: wtaylor@taylorandtaylorlaw.com
**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading is being served on all registered counsel of record through the EFC delivery system, as provided by the Local Rules at or shortly after the time and date of filing.

G. JAMES MARTINEZ

# EXHIBIT "A"

# American Forensics

P.O. Box 550846 • Dallas • Texas • 75355
(214) 221-2700 • FAX (972) 692-6676 • usaforensics.com

**Case number:** AF15-0204          **Decedent:** Phillip Vallejo

**Age:** 30     **Gender:** Male          **Race:** Hispanic

**Authorization:** Brenda Vallejo, wife of the deceased.

**Date and Time of Examination:** August 2, 2015 at 8:30 a.m.

**Forensic Pathologist:** Amy C. Gruszecki, MSFS, DO

## Preliminary Autopsy Findings

I. Gunshot wound to the left flank

    A. Entrance – a ¾ inch round wound to the left flank

    B. Path: injury to spleen

    C. No soot stippling or gunpowder particles surrounding wound

II. Gunshot wound to the left middle back

    A. Entrance – a 3/8 inch round wound to left middle back.

    B. Path: Through left rib posteriorly near vertebral column.

    C. No soot stippling or gunpowder particles surrounding wound

III. Gunshot wound to left lower back.

    A. Entrance – a 3/8 inch round wound to left lower back.

    B. Path: Through lower left ribs, posteriorly.

    C. No soot, stippling or gunpowder particles surrounding wound.

IV. Graze gunshot wound on left posterior medial arm – possibly related to gunshot wound of flank.

V. Exit gunshot wound on right lower chest.

VI. Exit gunshot wound on left middle chest.



**Accredited by the National Association of Medical Examiners**

**Preliminary report AF15-0204 Vallejo – Page 2**

VII.   Organs with injuries – stomach, liver (x2), spleen, diaphragm, mesentery.

VIII.   Body previously autopsied by Tarrant County medical examiner.

     A.  Exam appears thorough

     B.  Projectile likely recovered at exam.

IX.   Final report pending toxicology.

**Preliminary Cause of Death:**  Multiple gunshot wounds

**Manner of Death:** Homicide



**Accredited by the National Association of Medical Examiners**

# EXHIBIT "B"

E-FILED
TARRANT COUNTY, TEXAS
2/1/2016 1:17:52 PM
MARY LOUISE GARCIA
COUNTY CLERK
BY: Sarah VanTassel

CAUSE NO. **2016-PR00290-1**

| | | |
|---|---|---|
| **ESTATE OF** | § | **IN THE** _____ |
| | § | |
| **PHILLIP VALLEJO, JR.** | § | **PROBATE COURT** |
| | § | |
| **DECEASED** | § | **TARRANT COUNTY, TEXAS** |

## APPLICATION FOR APPOINTMENT OF TEMPORARY ADMINISTRATOR

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Brenda Vallejo, "Applicant," herein, makes this application for the appointment of Applicant as Temporary Administrator of the Estate of Phillip Vallejo, Deceased, and for the issuance of Letters of Temporary Administration and in support of this application respectfully shows the court the following:

### 1. APPOINTMENT

1.1   Brenda Vallejo resides and is domiciled in Tarrant County, Texas.

1.2   Phillip Vallejo died on the 31st day of July, 2015, in Tarrant County, Texas.

1.3   Decedent died intestate.

1.4   This court has jurisdiction and venue because the decedent was domiciled and had a fixed place of residence in Tarrant County, Texas at and before the time of his death.

### 2. NECESSITY OF APPOINTMENT

2.1   The interest of decedent's estate requires immediate appointment of a personal representative because of debts incurred by the decedent as well as ongoing third-party litigation which ensued as a result of the death of decedent, Phillip Vallejo. Consequently, appointment of the applicant is necessary due to the causes of action and claims involved in the ongoing third party litigation.

2.2   Applicant believes to the best of her knowledge, that the decedent did not own separate real property or separate personal property. Additionally, all accounts and debts at the time of death were of the community and decedent does not have children outside of the marriage. Decedent did not own real property located in Tarrant County, Texas. Decedent owned personal property having a value of $22,000.00 At a later date, Applicant, if appointed as temporary administrator, will file a detailed inventory of the Estate for the Court's review if necessary.

## 3. APPLICANT

3.1     Applicant is an heir of the decedent, and maintains an interest in the decedent's estate as his widow and biological mother of children born to the marriage.

3.2     Applicant would be a suitable temporary representative and is domiciled and resides at 237 South New Hope Road in Kennedale, Tarrant County, Texas.

3.3     Applicant is not disqualified by law from serving as Temporary Administrator of this Estate and as such is entitled to letters of temporary administration.

## 4. HEIRS & CHILDREN

4.1     The following persons are the heirs, and the only heirs, of the decedent:

1.     Brenda Vallejo, who is 33 years of age, whose address is 237 South New Hope Road, Kennedale, Texas 76060, and who is the widow of the decedent.   Decedent and applicant, Brenda Vallejo have two children from the marriage:  Phillip Michael Vallejo, Jr. who is 9 years of age and Gianna Brielle Vallejo who is 4 years of age.  Both children reside with applicant.

4.2     Two children were born to the decedent.

1.  Phillip Michael Vallejo, Jr., was born to decedent and Brenda Vallejo on 17th, day of June, 2006, in Tarrant County, Texas.

2.  Gianna Brielle Vallejo was born to decedent and Brenda Vallejo on 6th day of May 2011, in Tarrant County, Texas.

4.3     Decedent has not been divorced.  Applicant and decedent were married on the 12th day of September 2008 in Tarrant County, Texas.

## 5. DUTIES

5.1     The Temporary Administrator of this Estate should be giving the following powers:

a.  to sue all known individuals and entities which caused and or contributed to Phillip Vallejo's death as well as all rights and responsibilities associated with the third party litigation;

b.  to carry out all business of the estate including addressing debts of the decedent;

c.  to execute and deliver any instruments necessary to continue the third party litigation;

d.  to employ attorneys to prosecute the claims and causes of action of the Estate against all known individuals and entities named as defendants in the third party litigation;

e.  to pay all court cost and all necessary expenses and attorneys fees;

f.  to exercise any rights necessary to protect the Estate; and

g.  to take possession of any and all cash and property belonging to the decedent; to open accounts and to be authorized signatory on accounts.

### PRAYER

Applicant requests the Court to make an immediate appointment of Applicant, Brenda Vallejo as Temporary Administrator of Decedent's Estate to serve in that capacity until discharged by Order of this Court.

_Brenda Vallejo_
Brenda Vallejo, Applicant

                                        Respectfully submitted,

                                        The Henning Firm

                                        _M. Om M_
                                        Nicole E. Henning
                                        State Bar No. 24013054
                                        nicole@henningfirm.com
                                        G. James Martinez
                                        State Bar No. 24089444
                                        james@henningfirm.com
                                        435 W. Nakoma, Ste. 101
                                        San Antonio, Texas 78216
                                        T: (210) 563-7828
                                        F: (210) 563-7829

I, Brenda Vallejo, having been duly sworn, upon her oath, swear that the statements in the foregoing Application are based upon my personal knowledge and true and correct.

                                        _Brenda Vallejo_
                                        Brenda Vallejo, Applicant

Subscribed and sworn to before me on _Feb 1 2016_ by _Brenda Vallejo_

                                        _Christina Gonzales_
                                        Signature of officer

CHRISTINA GONZALES
Notary Public, State of Texas
My Commission Expires
February 02, 2016

                                        _Christina Gonzales_
                                        Printed Name

                                        My commission expires:
                                        _2/2/2016_